IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KIMBERLY R. SANDERS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **2:12-cv-3522-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Kimberly R. Sanders ("Sanders") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Sanders, whose past relevant experience includes work as a cleaner and laundry worker, filed an application for Title II disability insurance benefits and Title XVI Supplemental Security Income on October 26, 2009, alleging a disability onset date of June 10, 2009, due to asthma, chronic vascular headaches, fibromyalgia, irritable bowel

syndrome, and foot pain. (R. 17, 24, 149). After the SSA denied Sanders' claim, she requested a hearing before an ALJ. (R. 82-83). The ALJ subsequently denied Sanders' claim, (R. 14-26), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Sanders then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the

Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Sanders had not engaged in substantial gainful activity since June 10, 2009, and, therefore, met Step One. (R. 19). Next, the ALJ found that Sanders satisfied Step Two because she suffered from the severe impairments of "lumbar strain, status-post motor vehicle accident; fibromyalgia; migraine headaches; irritable bowel syndrome; [and] asthma." *Id*. The ALJ then proceeded to the next step and found that Sanders failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 20). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where she determined that Sanders has the residual functional capacity (RFC) to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), however, the claimant cannot work around chemicals, fumes or odors, cannot work outdoors, and must avoid hot and cold temperature extremes.

4

(R. 21).  In light of her RFC, the ALJ held that Sanders "is unable to perform any past relevant work."  (R. 24).  Lastly, in Step Five, the ALJ considered Sanders' age, education, work experience,[1] and RFC and determined "there are jobs that exist in significant numbers in the national economy [Sanders] can perform."  (R. 25).  Therefore, the ALJ found that Sanders "has not been under a disability, as defined in the Social Security Act, from June 10, 2009, through the date of this decision."  (R. 26).

## V.  Analysis

The court now turns to Sanders' contentions that the ALJ erred by (1) not giving proper weight to the opinion of her treating physician; (2) failing to recontact her treating physician; and (3) giving controlling weight to the opinion of the State agency reviewing physician.  *See* doc. 8 at 9-13. The court addresses each contention in turn.

    A.    <u>The ALJ properly considered Dr. Cummings' opinion.</u>

Sanders contends the ALJ did not give proper weight to the opinion of Dr. C. Louis Cummings, one of her treating physicians.  The record shows Dr. Cummings treated Sanders for irritable bowel syndrome, vascular headaches, and fibromyalgia from September 10, 2008, through April 13, 2010.  (R. 210-16, 278-81).  Dr. Cummings also completed a physical capacities evaluation on March 9, 2010, which limited Sanders to a total of four hours sitting and three hours standing/walking in an eight-hour workday,

---

[1]  As of the date of the ALJ's decision, Sanders was 48 years old, had a high school education, and had past relevant light to medium unskilled work as a cleaner and laundry worker.  (R. 24-25).

and to only occasional pushing and pulling, bending, stooping, and reaching.  (R. 235).  Dr. Cummings also  indicated on a Clinical Assessment of Pain form that Sanders' pain was "intractable and virtually incapacitating."  (R. 237).  Sanders argues the ALJ erred in giving Dr. Cummings' opinion little weight.  Doc. 8 at 9-12.

To determine how much weight to give Dr. Cummings' opinion, the ALJ had to consider several factors, including whether Dr. Cummings (1) has examined Sanders; (2) has a treating relationship with Sanders; (3) presented medical evidence and explanation supporting the opinion; (4) provided an opinion that is consistent with the record as a whole; and (5) is a specialist.  *See* 20 C.F.R. § 416.927(c).  Because Dr. Cummings is a treating physician, the ALJ must give "controlling weight" to his opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 416.927(c)(2).  Moreover, in this circuit "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" exists when the evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records.  *Id*.  Finally, if the ALJ rejects a treating physician's opinion, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion . . . and the failure to do so is reversible error."  *Id.*

Here, ALJ correctly applied the law and articulated a number of reasons why he found Dr. Cummings' opinion was entitled to "very little evidentiary weight." (R. 23). First, the ALJ noted that Dr. Cummings' own treatment undermine his opinions: "Most importantly, Dr. Cummings [sic] own treatment notes do not support these limitations, as he never referenced any pain upon sitting, reaching or stooping during any treatment visit prior to his completion of the above form." *Id.* As the ALJ observed, in July 2009, Dr. Cummings noted that Sanders' "[l]ow back pain and fibromyalgia are fairly stable, as is her irritable bowel syndrome." (R. 212). This notation was consistent with Dr. Cummings' April 2009 observation that Sanders' "irritable bowel syndrome has been adequately controlled," and that her "[v]ascular headaches are not an issue." (R. 213) The ALJ also found it significant that "Dr. Cummings only treated [Sanders] on one occasion, in April of 2010 for irritable bowel syndrome, following his completion of the physical capacity evaluation forms." (R. 23). The ALJ reasonably found this was "highly unusual in light of the fact that, according to Dr. Cummings, the claimant is 'incapacitated' by pain." *Id.*

Second, the ALJ found that Dr. Cummings' opinion was not supported by the other medical evidence: "Dr. Cummings imitations are contradicted by the findings of a comprehensive physical examination performed in October of 2010 by Dr. Julene Pearson," who the ALJ observed "documented entirely normal physical, neurological and musculoskeletal examination findings." *Id.* Although Sanders complained of back pain when seen by Dr. Pearson, physical examination of Sanders' back showed no tenderness

7

on palpation or muscle spasm, and Dr. Pearson indicated Sanders' musculoskeletal system was normal. (R. 297). Significantly, Dr. Pearson found that Sanders' lumbosacral spine "exhibited no abnormalities," had "full range of motion," and that "pain was not elicited by motion." *Id.* Moreover, Dr. Pearson's review of systems indicated Sanders was "[n]ot feeling tired or poorly," and had no pulmonary or gastrointestinal symptoms. (R. 296). Based on her examination, Dr. Pearson diagnosed asthma, but stated it "is well-controlled," and did not diagnose fibromyalgia, irritable bowel syndrome, or migraine headaches. (R. 297). This diagnosis further weakens Dr. Cummings' opinion of disabling pain.

Finally, the ALJ found Dr. Cummings' opinion was not supported by diagnostic testing. As the ALJ correctly observed, "[t]he objective evidence does not support Dr. Cummings opinion either, as numerous X-Rays of the claimant's spine, shoulder and extremities were all unremarkable, as was a CT scan of the claimant's abdomen." (R. 23, 258, 315-18).

Based on the lack of diagnostic support and the record as a whole, the ALJ found that "[t]here is simply nothing beyond [Sanders'] own allegations and statements which would support Dr. Cummings's conclusions," and, therefore, gave "very little evidentiary weight" to Dr. Cummings' opinion. (R. 23). In reaching this determination, the ALJ considered the factors set forth in the regulations and, consistent with this circuit's pain standard, articulated reasons why she gave Dr. Cummings' opinion very little weight. Specifically, the ALJ found that Dr. Cummings' opinion was inconsistent with Dr.

8

Cummings' own treatment notes, the other medical evidence, and the diagnostic test results.  Therefore, the ALJ had good cause for rejecting Dr. Cummings' opinion, and committed no reversible error.  *See Lewis*, 125 F.3d at 1440 ("good cause" exists when physician's opinion is inconsistent with own records, a contrary finding is supported by the evidence, and the evidence does not bolster physician's opinion); 20 C.F.R. § 416.927(c)(2) (opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence" to receive controlling weight).

        B.       <u>The ALJ was not required to recontact Dr. Cummings.</u>

The court is not persuaded by Sanders' second contention that the ALJ should have contacted Dr. Cummings for clarification.  Doc. 8 at 12-13.  Under the relevant regulation in effect at the time,[2] the ALJ only had a duty to contact Dr. Cummings if there was insufficient medical evidence to allow the ALJ to determine whether Sanders was disabled:

> When the evidence we receive from your treating physician or psychologist or other medical source is *inadequate for us to determine whether you are disabled,* we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.

---

[2] New regulations regarding  recontacting of medical sources went into effect on March 26, 2012.  77 Fed. Reg. 10651-01 (February 23, 2012).  Under the new regulations, recontacting a medical source is within the discretion of the ALJ.  *See* 20 C.F.R. § 404.1520b(c)(1) ("We *may* recontact your treating physician . . . .") (emphasis added).

9

> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.

20 C.F.R. § 404.912(e)(2010) (emphasis added). Here, the medical evidence included extensive treatment notes and diagnostic testing showing the extent of Sanders' impairments. Consequently, the ALJ had no obligation to recontact Dr. Cummings because the record contained sufficient medical evidence to allow the ALJ to make an informed disability determination.

Sanders' contention also misses the mark because she has not shown how the ALJ's failure to contact Dr. Cummings resulted in an unfair proceeding or clear prejudice. Before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. Unit A July 1981). Sanders has not established the requisite prejudice because there are no evidentiary gaps in the record that prevented the ALJ from making a conclusive determination regarding her disability. Therefore, remand for development of the record is not required.

  C. <u>The ALJ did not give controlling weight to the State agency reviewing physician.</u>

Finally, Sanders contends that the ALJ improperly gave "controlling weight" to Dr. Robert Heilpern, the State agency reviewing physician. Doc. 8 at 13. The record does not support Sanders' contention. Rather, in considering Sanders' credibility, the

ALJ cited portions of Dr. Heilpern's report showing Sanders had failed to cooperate in the disability determination process:

> In a State agency medical review note, Dr. Robert Heilpern also noted the claimant was not cooperating in the disability determination process, as she refused to complete daily activities or work history reports. Dr. Heilpern rated the claim insufficient based on the claimant's failure to cooperate. Furthermore, despite assurances to the contrary, as of the date of this decision, neither the work history report nor the daily activities report have been submitted.

(R. 24) (citations to the record omitted). This is the only mention of Dr. Heilpern's report by the ALJ, and shows that she did not rely on Dr. Heilpern's medical opinions. Therefore, Sanders' contention is without merit.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Sanders is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done this 28th day of July, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE